

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00083-CR

KERWIN DURVIN NERO                                              APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

## FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

The trial court convicted Appellant Kerwin Durvin Nero of unlawful possession of a firearm and sentenced him to eight years' confinement. In four points, Nero, pro se, argues that the evidence is legally and factually insufficient to support his conviction, that the trial court erred by failing to suppress evidence, and that his trial counsel was ineffective. We will affirm.

---
[1]See Tex. R. App. P. 47.4.

## II. BACKGROUND

On February 23, 2009, Officer Nicholas Maddock responded to a call about a person with a weapon. Several witnesses informed Officer Maddock that Nero was involved in the alleged altercation, and they provided a description of his vehicle. Officer Maddock broadcast a description of the vehicle, and Officer Caleb Ferren located Nero driving his vehicle and initiated a stop. Officer Ferren ordered Nero out of the vehicle, performed a "quick pat-down for weapons," and discovered a holster located on the inside of Nero's waistband. Officer Ferren removed the holster and asked Nero where the gun was located. Nero responded that he did not have a gun.

Meanwhile, Officer Michael Williams had arrived at the scene and ordered Nero's mother, Jacqueline, out of the passenger side of Nero's vehicle. Officer Williams observed a purse lying in plain view and "wide open" on the passenger-side floorboard and a 9 mm semi-automatic handgun inside of the purse. He retrieved the loaded gun. Officer Ferren asked Nero if the gun belonged to him, and Nero responded that "he didn't have it on him" but also acknowledged that "he had it on him earlier in the day" at his house. Jacqueline denied owning the gun and said that she knew nothing about it. Regarding the original call, officers "decided the elements of an aggravated assault were not present," but Nero was arrested and later indicted for unlawfully possessing the firearm.

## III. SUFFICIENCY OF THE EVIDENCE

2

In his first point, Nero argues that the evidence is legally and factually insufficient to support his conviction because he was not the sole occupant of his vehicle, the gun was not registered to him, and his fingerprints were not found on the gun. In his second point, Nero argues that "[t]he State failed to prove each and every element in the indictment," particularly, the possession element. We will address Nero's evidentiary challenges together.

The court of criminal appeals has held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)). The *Jackson* standard is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.*

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S.

at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

To establish the offense of unlawful possession of a firearm, as pleaded, the State was required to show that Nero was previously convicted of a felony offense and that he intentionally or knowingly possessed a firearm after the conviction and before the fifth anniversary of his release from confinement. *See* Tex. Penal Code Ann. § 46.04(a)(1) (West Supp. 2011). Nero does not dispute the prior felony conviction. Instead, he challenges the possession element of the offense.

"Possession" is defined as "actual care, custody, control, or management." *Id.* § 1.07(a)(39) (West 2011). A person commits a possession offense only if he voluntarily possesses the prohibited item. *Id.* § 6.01(a) (West 2011). Possession is voluntary if the possessor knowingly obtains or receives the thing possessed

4

or is aware of his control of the thing for a sufficient time to permit him to terminate his control. *Id.* § 6.01(b).

If the firearm is not found on the accused's person or is not in the exclusive possession of the accused, the evidence must link the accused to the firearm. *Sutton v. State*, 328 S.W.3d 73, 76 (Tex. App.—Fort Worth 2010, no pet.); *Bates v. State*, 155 S.W.3d 212, 216 (Tex. App.—Dallas 2004, no pet.). The purpose of linking the accused to the firearm, whether by direct or circumstantial evidence, is to protect innocent bystanders from conviction based solely on their fortuitous proximity to the firearm. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005); *Villarreal v. State*, Nos. 02-07-00329-CR, 02-07-00330-CR, 2009 WL 671042, at *1 (Tex. App.—Fort Worth Mar. 12, 2009, pet. ref'd) (mem. op., not designated for publication) (stating that the links doctrine also applies to possession of firearms). Factors that may link the accused to the firearm include whether the firearm was in plain view, whether the accused was the owner of the vehicle in which the firearm was found, whether the accused was the driver of the vehicle in which the firearm was found, whether the accused was in close proximity and had ready access to the firearm, whether the place where the firearm was found was enclosed, and whether affirmative statements connect the accused to the firearm, including incriminating statements made by the accused when arrested. *Sutton*, 328 S.W.3d at 77; *Bates*, 155 S.W.3d at 216–17. It is not the number of factors that determines whether the elements of

5

the offense have been established but the logical force of the factors. *Sutton*, 328 S.W.3d at 77.

The record contains ample evidence linking Nero to the firearm discovered in Jacqueline's purse. Specifically, Officer Maddock responded to a person-with-a-weapon call, and witnesses initially implicated Nero in the alleged confrontation. When Officer Ferren searched Nero, he discovered a holster attached to Nero's waistband. Nero claimed that he owned the holster, and Officer Ferren testified that the handgun fit "perfectly" inside of the holster. Officer Williams discovered the loaded handgun not only in Nero's vehicle, but in Jacqueline's purse, which was "wide open," located on the passenger-side floorboard, and within the reach of the driver, Nero. When Officer Ferren asked Nero if the handgun belonged to him, Nero acknowledged that "he had it on him earlier in the day" at his house.

Jacqueline testified that Nero drove her to a house on February 23, 2009, to visit Nero's children—her grandchildren; that she left her purse in Nero's vehicle during the fifteen- to twenty-minute visit; that there was an altercation at that location; that she did not bring a handgun in her purse that day; and, in fact, that she does not even own a handgun. Jacqueline confirmed that her purse was not zipped when she returned to Nero's vehicle after visiting her grandchildren, that she did not check her purse between the time that she left the house where she visited her grandchildren and the time that the police stopped Nero's vehicle, that she told one of the officers that there was no handgun in her

6

purse when she arrived at the house, and that the first time she learned of any handgun at all was when Officer Williams discovered it in her purse.

Nero is correct that he was not the sole occupant of his vehicle and that his fingerprints were not found on the handgun, but that does not end our possession inquiry. Viewing the evidence in the light most favorable to the verdict, and giving full play to the responsibility of the trial court to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts, the trial court could have found beyond a reasonable doubt that Nero intentionally or knowingly exercised actual care, custody, control, or management of the handgun that authorities discovered in Jacqueline's purse in Nero's vehicle. Accordingly, we hold that the evidence is sufficient to support Nero's conviction for unlawful possession of a firearm. We overrule Nero's first and second points.

### IV. MOTION TO SUPPRESS

In his third point, Nero appears to argue that because police unlawfully frisked or arrested him, the trial court erred by denying his motion to suppress the handgun discovered in his vehicle.

To preserve error about the illegal seizure of evidence, a defendant must either file a motion to suppress and obtain a ruling on the motion or timely object when the State offers the evidence at trial. *See* Tex. R. App. P. 33.1(a); Tex. R. Evid. 103(a)(1); *Roberts v. State*, 545 S.W.2d 157, 158 (Tex. Crim. App. 1977); *Ratliff v. State*, 320 S.W.3d 857, 860 (Tex. App.—Fort Worth 2010, pet. ref'd).

7

In this case, Nero neither filed a motion to suppress any evidence nor asserted an objection when the State offered the handgun into evidence. Consequently, Nero failed to preserve this point for appellate review. We overrule Nero's third point.

## V. INEFFECTIVE ASSISTANCE

In his fourth point, Nero argues that his trial counsel rendered ineffective assistance because he failed to investigate "nonstatutory mitigating evidence," failed to properly object to certain evidence, failed to call a witness, and failed to present mitigating evidence at the punishment phase.

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the

8

time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

This case demonstrates the "inadequacies inherent in evaluating ineffective assistance claims on direct appeal." *See Patterson v. State*, 46 S.W.3d 294, 306 (Tex. App.—Fort Worth 2001, no pet.). Nero filed a motion for new trial, but he did not specifically argue that his trial counsel was ineffective, and there is no record of a hearing at which any alleged ineffectiveness was explored. The record does not reflect trial counsel's reasons for doing or not doing the things of which Nero complains, and we will not speculate about trial

9

counsel's complained-of acts or omissions. Further, we cannot conclude that this is one of those rare cases in which the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003)). Accordingly, based on this record, and in light of the strong presumption of reasonable professional assistance by defense counsel, we cannot conclude that Nero met his burden of showing by a preponderance of the evidence that his trial counsel's representation fell below the standard of prevailing professional norms. *See Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064–65; *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 62–63. We overrule Nero's fourth point.

## VI. CONCLUSION

Having overruled all four of Nero's points, we affirm the trial court's judgment.

BILL MEIER
JUSTICE

PANEL: DAUPHINOT, GARDNER, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: November 10, 2011

10